Lauren M. Hausman (CA Bar No. 349514)
**COPYCAT LEGAL PLLC**
113 N San Vicente Blvd
Suite 232
Beverly Hills, CA 90211
T: (877) 437-6228
E: lauren@copycatlegal.com

Attorney for Plaintiff
ROCKEFELLER PHOTOS, LLC

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKEFELLER PHOTOS, LLC, | Civil Action No. 2:25-cv-04092-DMG-MBK |
| Plaintiff, | |
| v. | |
| KOSHERCO LLC d/b/a KOSHCO SUPERSTORE, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO SET ASIDE DEFAULT** |
| Defendant. | |

Plaintiff Rockefeller Photos, LLC ("Plaintiff") hereby files this memorandum in opposition to defendant Kosherco LLC d/b/a Koshco Superstore's ("Defendant") Motion to Set Aside Default (the "Motion") [D.E. 20].

### PROCEDURAL HISTORY / BACKGROUND

1. On May 7, 2025, Plaintiff filed its Complaint [D.E. 1] in this action. The Complaint asserts a single claim for copyright infringement with respect to

Defendant's alleged unauthorized publication/display of a photograph (the "Work") on its business website in connection with the sale of "Eggplant Jumbo, 2-Pack."[1]

2.      On June 11, 2025, Defendant was served with a copy of the Summons and Complaint in this action.  See D.E.11.  Defendant's response to the Complaint was thus originally due on July 2, 2025.

3.      On July 2, 2025, Defendant's counsel (Melvin Teitelbaum, Esq.) e-mailed undersigned counsel, noting that he had been asked to represent Defendant and asking for a phone call to discuss early resolution.[2]

4.      On July 3, 2025, Mr. Teitelbaum sent another e-mail to undersigned counsel which requested a 2-week extension of time for Defendant to respond to the Complaint.  Undersigned counsel responded the same day and agreed to the extension.[3]

5.      On July 7, 2025, the Court issued an Order to Show Cause why this case should not be dismissed for lack of prosecution.  That same day, undersigned counsel forwarded the Order minutes to Mr. Teitelbaum and asked if he was planning to file a motion for extension of time for Defendant to respond as

---

[1]      See Complaint, at ¶¶ 8 – 14.
[2]      See Exhibit "A," a true and correct copy of the September 12, 2025 Declaration of Lauren Hausman, Esq. (the "Hausman Decl."), at ¶ 6.
[3]      Id. at ¶ 7.

previously agreed.[4]

6.    Because Mr. Teitelbaum did not file his own motion for an extension, on July 11, 2025, Plaintiff filed both a response to the Order to Show Cause and a Notice of Motion and Motion for Extension of Time for Defendant to file its Answer. See D.E. 14.

7.    Plaintiff's motion for extension of time requested that Defendant be provided until July 25, 2025 to file its response to the Complaint.

8.    On July 25, 2025, undersigned counsel e-mailed Mr. Teitelbaum to notify him that Defendant's response to the Complaint was due that day (and to respond to an earlier-conveyed settlement offer).[5]    That e-mail specifically volunteered that, if Mr. Teitelbaum wanted a further extension of time to consider Plaintiff's settlement demand, he could file such motion as unopposed:

> In case you have not seen on Pacer, Defendant's answer is due today. My client remains open to resolution. That said, if you would like to file an unopposed motion for extension of time, you can let the court know Plaintiff consented. I cannot file it on Defendant's behalf, as I am about to be out of the country. Along those lines, please copy Tia on any response. She will either make sure the email gets to me or will route it to another attorney in the firm in my absence.

9.    Mr. Teitelbaum did not respond to undersigned counsel's e-mail until July 28, 2025 wherein he queried: "What gives? Didn't you dismiss this already?"[6]

10.    That same day, the Court issued another Order to Show Cause as to why the case should not be dismissed for lack of prosecution (as Defendant did not

---

[4]    Id.
[5]    Id. at ¶ 10.
[6]    Id. at ¶ 11.

respond by the July 25, 2025 deadline).   The Order required a response from Plaintiff by August 1, 2025.

11.    Because undersigned counsel was out of the country on vacation during the week of July 28, undersigned counsel's managing attorney (Daniel DeSouza, Esq.) responded to Mr. Teitelbaum's e-mail on July 29, 2025.[7]

12.    That e-mail notified Mr. Teitelbaum of the Order to Show Cause, that a response thereto was being filed same day, and that if Defendant did not appear by August 1, 2025, Plaintiff would have no choice but to move for default:

> But yes, we now have an Order to Show Cause to respond to due to your client failing to appear/respond by the agreed date. We'll be filing our response to the Order to Show Cause today and, if nobody has appeared by 8/1, we have no choice but to file for a Clerk's default. That's not to say we oppose a further extension of time (filed by the defendant rather than us), but we now need to expend further time/effort in dealing with an Order to Show Cause due to a response deadline being missed by your client.

13.    Further, as noted above, the e-mail left open the possibility of agreeing to a further extension of time for Defendant to respond, but indicated that such would need to be requested by Defendant given the issuance of the second Order to Show Cause.

14.    Plaintiff filed its Response to Order to Show Cause [D.E. 17] on July 29, 2025 (3 days in advance of the response deadline).

15.    The Response to Order to Show Cause noted that Plaintiff did not oppose a further extension of time for Defendant to respond to the Complaint – but only if the Court did so sua sponte or if Defendant requested such (as Mr.

---

[7]    Id. at ¶ 12.

Teitelbaum did not himself request such relief).

16.     On August 1, 2025 – given that Defendant still had not appeared or requested an extension of time – Plaintiff filed its Motion for Clerk's Default [D.E. 18].

17.     Undersigned counsel e-mailed the Motion for Clerk's Default to Mr. Teitelbaum on August 4, 2025.

18.     On August 6, 2025, the Clerk entered its Default against Defendant. See D.E. 19.

19.     As the attached e-mail chain demonstrates, counsel for the parties continued to exchange e-mail thereafter and ultimately participated in a telephonic meet and confer on August 12, 2025 with respect to the anticipated filing of the Motion.

20.     On August 13, 2025, undersigned counsel notified Mr. Teitelbaum that Plaintiff did not agree to set aside the default.

21.     Defendant then waited an additional 7 days – until August 20, 2025 – to file the Motion.

## **ARGUMENT**

## I.    **Legal Standard**

A clerk's entry of default may be set aside for "good cause."  Fed. R. Civ. P. 55(c).  "To determine 'good cause,' a court must consider three factors: (1)

whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." <u>United States v. Signed Pers. Check No. 730 of Yubran S. Mesle</u>, 615 F.3d 1085, 1091 (9th Cir. 2010). This standard "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." <u>United States v. Mesle</u>, 615 F.3d 1085, 1091 (9th Cir. 2010).

## II.    Analysis of the Factors

### A.    *Defendant's Culpable Conduct*

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." <u>Mesle</u>, 615 F.3d at 1092-93. Here, the Motion argues that default was entered "as a result of ROCKEFELLER's absolute failure to abide by the court's intent in not dismissing this action."[8] Defendant's position is, in a word, nonsensical. According to Defendant, because undersigned counsel did not respond to Defendant's initial settlement offer, Defendant *assumed* the case was dismissed without Mr. Teitelbaum ever endeavoring to check PACER or follow-up. But even if such was excusable (it is not), Defendant offers *zero* explanation for why it continued to ignore the matter when Mr. Teitelbaum was notified on July 25, 2025 that

---

[8]    See Motion, at p. 5.

Defendant's response was due and on July 29, 2025 when Plaintiff's counsel specifically informed Mr. Teitelbaum that a motion for Clerk's default would be filed if Defendant did not appear before August 1, 2025 (the deadline for Plaintiff to take action under the Order to Show Cause).

Plaintiff bent over backwards to avoid seeking a default in this case – first by filing a motion for extension on behalf of Defendant and later by waiting until the last possible moment to move for default to provide Defendant the opportunity to appear and/or request a further extension of time.  Plaintiff did not engage in "sly and deceptive" conduct as Mr. Teitelbaum casually alleges… rather, Plaintiff did everything it could to accommodate Defendant and notify it of the response deadline(s).  Defendant deliberately ignored the deadlines and then waited an additional 20 days before endeavoring to file the Motion.  Defendant is not *pro se*. It is represented by experienced counsel that was well aware of the deadlines and the consequences for failing to meet those deadlines.  Rather than take any action to protect his client's rights, Mr. Teitelbaum lashed out at Plaintiff's counsel (even after being provided more opportunities to avoid default) and deliberately ignored every deadline in this case… apparently hoping to force a dismissal for lack of prosecution that was caused by Defendant's own conduct in failing to appear/defend.  For this reason alone, the Court should deny the Motion.

### B.    Lack of Meritorious Defense

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." <u>Mesle</u>, 615 F.3d at 1094.  The defendant need only "allege sufficient facts that, if true, would constitute a defense[.]"  <u>Id.</u>  Although the burden here is 'minimal,' the Motion fails to allege *any* facts that would constitute a defense to Plaintiff's infringement claim.

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a).  Copyright infringement claims have two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[9]  <u>Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC</u>, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)).

Here, the Motion relies exclusively on a Declaration of Daniel Hecht[10] (the

---

[9]    The second element of a copyright infringement claim, copying, may be established by showing the defendant (1) had access to the work, and (2) the two works are "substantially similar" in idea and expression.  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 481 (9th Cir. 2000); <u>see also</u> <u>Unicolors, Inc. v. Urban Outfitters, Inc.</u>, 853 F.3d 980, 984-85 (9th Cir. 2017) ("If there is no direct evidence of copying, a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work.").

[10]    It is worth noting that the 'declaration' is plainly insufficient under 28 U.S.C. § 1746 as it fails to contain the language required by subsection (2) thereof.

managing partner of Defendant).  According to Mr. Hecht, he "saw a picture of an eggplant on-line," "liked the picture and decided to use it on our website and in the local advertising promotions that we do on-line."[11]  Mr. Hecht ***does not*** challenge Plaintiff's ownership of exclusive rights or that Defendant displayed the Work without Plaintiff's permission.  Indeed, he plainly admits to such display.

Nor does Mr. Hecht identify anything reminiscent of a defense to Plaintiff's infringement claim.  At most, Mr. Hecht asserts (1) there was no copyright indication/disclaimer on the photograph and (2) Defendant did not profit off its sales of eggplant during its infringing use.  Neither of these, however, constitutes a defense to infringement.  As the Court knows, the lack of a copyright notice on a photograph has not served as a defense to infringement since at least March 1, 1989 (the implementation of the Berne Convention in the USA).  See Shen Eng'g, Inc. v. Brighton, 748 F. Supp. 3d 1086, 1101 n.75 (D. Utah 2024) ("Effective March 1, 1989, the Copyright Act was amended by the Berne Convention Implementation Act of 1988, under which the placement of any copyright notice on the work itself became optional rather than mandatory.").  Taking the declaration at face value, the absence of a copyright symbol/notice does not defeat a claim for infringement.  This is because "intent is irrelevant to copyright infringement, at least at the stage of liability."  Daggs v. Bass, Civil Action No. 11-

---

[11]    See Motion, at p. 6.

30070-FDS, 2012 U.S. Dist. LEXIS 165612, at *12 (D. Mass. Nov. 20, 2012). Thus, whether Defendant knew it was infringing or not is irrelevant to whether it has a defense.

Lack of profit is likewise not a defense to an infringement claim.  See, e.g. Comerica Bank & Tr., N.A. v. Habib, 433 F. Supp. 3d 79, 96 (D. Mass. 2020) ("Habib's sixth defense, protesting that he should not be held liable because he did not profit from his use of Prince's compositions, also fails as a matter of law."). "Under the Copyright Act, a plaintiff who establishes the elements of a copyright infringement claim may recover damages, including 'any profits of the infringer that are attributable to the infringement.'"    D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., 2020 U.S. Dist. LEXIS 1359, at *5 (D.N.H. Jan. 6, 2020) (quoting 17 U.S.C. § 504).  Disgorgement of profits is one of several *remedies* available to a plaintiff that has established the elements of an infringement claim, but the existence of profits is not an element itself.  That Defendant purportedly did not profit from its infringement simply means that Plaintiff is far more likely to elect statutory damages (ranging from $200.00 - $150,000.00 per work) rather than elect actual damages/disgorgement of profits as a remedy.

Defendant has not identified *any* facts that, under any interpretation, could be considered a defense to Plaintiff's claim.  Defendant does not argue that it licensed the Work, that the copyright registration is invalid, etc.  Defendant is free

to argue for lower damages in a response to a motion for default judgment, but its arguments here are plainly insufficient for establishing a defense to liability.  As a result, this factor likewise mandates denial of the Motion.

### C.    Prejudice

"[N]o prejudice exists where setting aside default would merely delay resolution of the case, force the plaintiff to litigate its claims on the merits, or result in litigation costs."  Viewsonic Corp. v. Electrograph Sys., No. CV 09-04093 SJO (JCx), 2009 U.S. Dist. LEXIS 136358, at *7 (C.D. Cal. Sep. 30, 2009).  Here, Plaintiff concedes that it would not be prejudiced if the default is set aside.

## III.    The Court Should Deny the Motion

As set forth above, the factors for setting aside a default "are disjunctive, such that *the court may deny the motion if any of the three factors are true*."  Avila v. Newrez, LLC, No. 2:24-cv-02264-TLN-CSK, 2025 U.S. Dist. LEXIS 42881, at *3 (E.D. Cal. Mar. 10, 2025) (emphasis added).  Defendant has unequivocally failed to establish 2 of the 3 factors for setting aside a default notwithstanding being represented by counsel who was well aware of the factors. Other than shockingly blaming Plaintiff for not timely responding to a settlement offer, Defendant has offered no reasoned explanation for its default, failure to monitor the docket, and failure to respond even after being offered several opportunities to do so.  The excuses proffered by Defendant are simply insufficient.

For example, while undersigned counsel is sympathetic to Mr. Teitelbaum's religious concerns which ostensibly excuse not responding to the July 25, 2025 e-mail until July 28, 2025, the Motion fails to offer any explanation why Mr. Teitelbaum did not appear/file a response to the Complaint on July 28, July 29, July 30, July 31, August 4,[12] August 5, or August 6 (when the Clerk's default was ultimately entered). Defendant was specifically on notice of its response deadline and of the Order to Show Cause which required Plaintiff to move for default by August 1, 2025. Rather than do anything to avoid a default, Defendant instead (as evidenced by Mr. Teitelbaum's e-mails) gambled that the Court would dismiss the Complaint for lack of prosecution (which was entirely caused by Defendant's failure to appear). Defendant gambled incorrectly, and now seeks to blame Plaintiff for its tactical errors. As Defendant has failed to establish 2 of the 3 factors, the Motion must be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion and (b) for such further relief as the Court deems proper.

Dated: September 12, 2025.              By: /s/ Lauren M. Hausman
                                        Lauren M. Hausman, Esq.
                                        Attorney for Plaintiff
                                        Rockefeller Photos, LLC

---

[12]    Excluding August 1 – 3 as part of the sabbath.

1

2

## <u>CERTIFICATE OF SERVICE</u>

3

I hereby certify that on September 12, 2025, I electronically filed the

4

foregoing document with the Clerk of the Court using CM/ECF, which will

5

electronically serve all counsel of record.

6

7

<u>/s/ Lauren M. Hausman</u>

8

Lauren M. Hausman, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25